So our first case for argument, Nationwide v. GSF, Mr. Jorgensen. Good morning, may it please the court. My name is Christian Jorgensen. I represent the plaintiff appellant, Nationwide Advantage Mortgage Company. As the court is aware, this matter is before you on cross motions for summary judgment. The Eastern District of Wisconsin, having found in favor of the defendant, GSF Mortgage Company. The parties in this dispute are sophisticated business entities. They executed- Well, I don't know. Nationwide doesn't sound sophisticated to me. You pay bills without knowing what they are. They executed one 13-page contract in October- You paid bills, right? You paid these bills without knowing what they were. If you'd known what they were, you wouldn't have paid them. Your Honor, there were respectfully- Is that true? 17,000 entries over a period of four years. Yeah, and you're paying bills. Why are you paying these bills without finding out what they are? We took a sampling to find out what they were. They were coded entries, Your Honor. I don't understand paying bills without knowing what they are. In October of 2006, they entered into one contract that was 13 pages long that governed their entire business relationship. It was entitled a Correspondent Lender Purchase Agreement, and it was governed by Iowa law. The purpose of the contract was to establish the framework by which GSF would originate mortgage loans conforming to Fannie Mae standards, and Nationwide would purchase and ultimately sell those loans on the secondary loan market. There was no time limit for expiration. But eventually you stopped buying them, right? Pardon me, Your Honor? Eventually you stopped buying mortgages from GSF. We did, Your Honor, because we terminated the contract. But you kept paying the bills for the DL or whatever it is. We did keep on paying those. Why did you do that? Because we didn't know that they were- Because you didn't know. I know you're paying bills without knowing what they're for and whether you actually owe the money. And you said you start off by saying Nationwide and GSF are sophisticated. Even moderately sophisticated people in firms do not pay bills without knowing what the purpose of the bill is, what they're being charged for, which in this case was nothing. I would respectfully disagree in the extent that sophisticated entities, very, very large entities with billing that is voluminous and sent by Fannie Mae, another institution, that sends it in such a way as to make it very difficult. Look, large entities have lots of employees and lots of electronic equipment. They ought to be able to keep track of their bills and know what they're paying the bills for rather than losing hundreds of thousands of dollars. Your Honor, even if that got missed, there was never a situation before that where there was such a gross abuse of a sponsorship before GSF. So actually charging Nationwide with having found out and discovering their wrongdoing ahead of their wrongdoing is an abuse of discretion by the district court. So placing the burden of our discovery before the burden of GSF not having actually wrongfully used our D.O. or our sponsorship is incorrect. Well, I don't understand. What's their wrongdoing? Their wrongdoing is continuously selecting the sponsorship of Nationwide for the D.O. after the business relationship was over and after they were terminated. That was wrongful. You mean after you stopped buying mortgages from GSF? Well, that was a result of us terminating the contract with GSF. So you told them you weren't doing business with them anymore. Correct. Did you tell them that that meant they couldn't use you as a sponsor? We told them they could not continue using our proprietary information, Your Honor. No, answer my question, not your question. And what is that, Judge? I asked you, did you tell GSF, GSF couldn't use Nationwide as a sponsor anymore? Did it use that language in its termination letter? No. Why not? I don't know. It wasn't asked by GSF in their 30B6 deposition. I don't get that. You wanted to terminate the sponsorship, but you didn't tell them? Your Honor, the way this was looked at by Nationwide, it had never been an abuse. There had never been an abuse of a sponsorship to the magnitude of GSF ever. In fact, the- So you had little abuses, and you didn't mind them. Actually, no. I'm sorry, Judge. No abuses. We're talking about three when the audits- Never been abused before? Never been abused. In fact, it was Fannie Mae who brought this- You just said you'd never had as big an abuse. Correct. And that implies you had little abuse. When we performed the audit, which is in our materials, there was two other uses. Of the 160 correspondent lenders that this program was used with, when the audit was completed with Fannie Mae's help, there was three correspondent lenders who were terminated that had used the DO system after they were terminated. Only three of that 160. Now, they used it to the tune of a- You sued all three? No, we did not, Judge. Why not? Because it would have been not worth our while, because the uses were so small. And then they stopped using that after, of course, we told them to. Do I recall correctly you're asking for $230,000? No, $277,940, Your Honor. Since, from the date they received the termination letter, until we were removed from the deal- By termination letter, you mean you were no longer going to buy mortgages from them. Did you tell them that as a result of your decision not to buy mortgages from them,  We told them that they could not use our proprietary information any longer. That's in writing, and they received it with the termination of the contract. What's the proprietary information? Our sponsorship and our sponsorship number. Sponsorship doesn't sound like proprietary information to me. Well, Judge, if we look at paragraph 9 of the contract, it's written in such broad language, and that's just two of the contract paragraphs that they breached. If we look at paragraph 9, and it says, proprietary information shall include, but is not limited to, underwriting- Wait, where are we? Oh, I'm sorry. If you take a look at the opening brief, page 26, Judge, I set that forth. Otherwise, in our materials- 26, okay. Okay, I set it forth. It's paragraph 9 of the contract. Proprietary information shall include, but shall not be limited to, underwriting processes and guidelines, and just generally, just generally, systems, processes, procedures, or practices. Now, this is written in the broadest of language that we can. Now, if that doesn't catch it as proprietary information, Judge, then paragraph 12 certainly does encompass it, because that's our indemnification clause, and that's our fail-safe. Now, paragraph 12, if you flip to page 28 of the opening brief, Your Honors, it says, GSF is obligated to indemnify and hold harmless from any all claims, losses, expenses, including reasonable attorney's fees, anything that nationwide may incur and which arise from any action or omission of GSF. Now, both paragraphs 9 and 12 expressly survive termination of the agreement under paragraph 17D, expressly. Now, as I cited in Westlake Investments v. MLP Management, terms such as arising out of and relating to constitute the broadest language parties could possibly use. The action by GSF is the continued use of Nationwide as a sponsor? Correct, Judge. They had to go on a computer, on the automated system, manually click on the sponsorship of Nationwide. And they had to do this over 14,000 times for four years after they were terminated. Now, they admit having been terminated, knowing they were terminated. They admit having, knowing there was no more business relationship. They admit not asking our permission afterwards to continue to use it. But did you actually tell them that you wouldn't sponsor them anymore? That's proprietary information. We told them in the termination letter, which is attached. But you didn't say, you didn't mention sponsoring. No, nor did we have to, Judge. How big is Nationwide? The mortgage company? Yeah, your client. It's based in Iowa, and I don't know how many employees that they have. Well, how large is its capital, or its sales? Your Honor, as I stand here before you, I don't know. You don't know anything about the finances of your client? How much they do in sales back and forth? You don't know if it's a billion dollar company, or a $100 million company, or? It's a successful company, Judge. And it's a large player in the mortgage resale. Why is it fussing so over the $277,000 if it's a large company? Because it's real money, Judge. It's your own mistake. I don't mean you personally. I mean Nationwide. Why didn't it just tell GSF no more sponsorship? Well, regardless of whether or not they did or they didn't, they didn't have to, Judge. You said they didn't. You didn't say whether they did or didn't. No, I said that in the termination letter, they were told not to use proprietary information. But you didn't, but Nationwide did not say don't sponsor anymore, which would be so simple. Two words. But the company didn't, for whatever reason, the company didn't have to. But at the end of the day, your Honor, it's breach of contract. But you wouldn't have this case if you'd said sponsor. We probably wouldn't have a thousand of cases in hindsight if they would have done something like this. And I agree with you, Judge, that that would have made things a lot simpler and we would not be before you today had they done it. I completely agree with that statement. But they don't have to completely come out and say stop using our sponsorship. They darn well should have known when the relationship is over, you don't use the sponsorship. That's common sense. Besides that. But of course, the contract talks about proprietary information. And identity, Judge. What's proprietary about the word sponsor? What could be more proprietary other than your name? I mean, if you don't own your name, then I don't know what else it is that you could own. But Mr. Jorgensen, if it was included in the initial agreement, why was it that the question of sponsorship came up after the agreement was signed? It wasn't, you're correct, Your Honor, it wasn't negotiated at the time of the original contract. It came up later. Why it didn't come up until later or why Nationwide did not offer its sponsorship until later or offer its underwriting ability, I don't know for sure. My, I suspect, is they withheld the underwriting ability of GSF until it started its relationship with GSF.  So while that's not an evidence, that would be my understanding, is they were withholding that. And it's also my understanding is when you write a contract in broad language with both of these sets of paragraphs written this way, so that it could involve specifically, so that it could incorporate terms and circumstances not specifically enumerated therein. Like, these two paragraphs are written so that it would- Being a sponsor or not being a sponsor is not proprietary information. I respectfully disagree, Judge, because under that definition in the contract that was written, that's before your honors, it falls under there. And even if it doesn't, Judge, even if it doesn't, it certainly falls under paragraph 12. But it's not information at all, I don't get it. Proprietary information would be, you know, trade secrets, that sort of thing. This is just a relationship between two companies. One is a sponsor, the other is the sponsored. So I don't see how a proprietary information clause embraces sponsorship. Then we don't even need to get hung up on it anymore, other than that we respectfully disagree, and we move to paragraph 12, which is the general indemnity clause, and there simply is no escape from that one. I mean, that's our catch-all. I mean, that's an action. If they had to go on the computer screen and click, and manually click, and take nationwide and grab it, even though they knew they didn't have a relationship with them anymore. But click, that's an action. And it says, clearly, any action or omission of GSF, and they're liable to us for it, and that survives termination. How does GSF escape their indemnity clause? They don't. So GSF wanted to have a sponsor. Now, they stopped selling mortgages to Nationwide. And why would they have thought that that would necessarily affect their sponsorship? Your Honor, I'm out of time. But answer my question. Could you rephrase the question, Your Honor? I'm sorry. Yeah. They stopped selling mortgages to Nationwide. They like still having the sponsorship so they can get the DO. So they continue as a sponsor. They figure, well, you know, maybe Nationwide doesn't want this and will cancel us, but they haven't said anything. It would be the simplest thing in the world to say, look, GSF, now that you're no longer selling us mortgages, we're not going to sponsor you. We're not getting anything for that. But that presupposes that they knew they were wrongfully using it. And now Fannie Mae had to tap them on the shoulder and say, by the way, we just uncovered this. By the way, these people are wrongfully using you as a sponsor, and we noticed they haven't sold you mortgage loans in four years. That's what triggered it. I mean, of the seven or eight different uncontroverted reasons why neither we nor Fannie Mae discovered their unauthorized uses, I mean, that's why we didn't tap them on the shoulder. As soon as we did, we, of course, told them, stop using our sponsorship. And we removed ourselves from the website. I mean, there were only excuses. Well, I mean, you were on the website, so we used you. We had other sponsors that we could have used, but, well, we didn't use them. OK. Well, thank you, Mr. Jorgensen. Your Honors, do I have? Yeah, I'll give you time. Thank you, Judge. Ms. Neary. Good morning. Elizabeth Neary on behalf of GSF Mortgage Corporation. I want to first address a comment. Do you know how big Nationwide is? I don't know their dollar volume, but I know that you can't turn on the television without hearing their name. I know that they're an extremely large company. The mortgage division is just one division of them, but I don't know their dollar volume. I want to start out by commenting on a comment made during Plaintiff's Counsel's presentation. He ended by saying that they had other sponsors, but they just didn't use them. And he makes that comment in his reply brief on four separate occasions. There is not one shred of evidence in the record on this case, Your Honor, that supports that statement. When it's made in the reply brief, there's no citation to the record. And the reason there's no citation is because there is nothing in the record that says that GSF only used Nationwide. It's simply not a true statement. I wanted to comment on that. I also wanted to comment on the use, not only in the presentation, but also in the briefs of this being a wrongful use by GSF. And there's language throughout the briefs of it being wrongful, some supposition that GSF must have been angry about terminating, that this was suspicious activity, that they surreptitiously obtained. There's nothing surreptitious about this. They go on the computer. They log in, they being GSF. They enter an ID number to access the system. They input information about a prospective borrower. And then they have to choose a sponsor during this time period. They had eight to 12 sponsors to choose from, and the testimony during the depositions disclosed that that wasn't a name, it was a number that was chosen. Until Nationwide withdrew its number from that system, they did have permission to use it. There was nothing surreptitious, nothing sneaky about this, and they had the permission until, in fact, it was withdrawn. They didn't have to ask additional permission once the contract was terminated. What about the other sponsors? Does it pay them or does it? So Nationwide's argument is that no one would sponsor a company like GSF, a mortgage company, unless that company sold mortgages to Nationwide.  However, GSF was unaware that those sponsors were being charged for that service. It was completely unaware, and that was the only evidence that was before the district court. You mean they didn't know Nationwide had to pay Fannie Mae? That's correct. They didn't, and the reason they didn't is, number one, Nationwide never told them, nor did any other sponsor, and number two, they were paying for these reports. They weren't getting them for free. They paid $15 every time they received a report, and throughout this entire period, they paid what they were required to pay each and every time they used it. It made no sense to them. Is it your position that because Nationwide had to pay the remaining $20-plus, that was notice to them that you were doing it? I mean, the $15 didn't cover the whole fee, right? Apparently not, and again, that was not known to my client until after Nationwide made them aware and when they filed this lawsuit. They did not know that, but it is true, Your Honor. GSF was paying $15? Yes. I'm just following up on Judge. They were paying $15 for each and every report. And then Nationwide pays $20? Yes, and to follow up on your question, Your Honor, if I'm understanding it correctly, Nationwide did know because they received statements every single month from Fannie Mae, and those statements not only identified the amount that they owed, but they identified the user. And every month they claimed in their depositions that they reviewed those bills, they put their stamp of approval on them for payment, and they paid them. Well, didn't Mr. Jorgensen say that what they got, I guess, was just a number and they didn't? Well, it was an identifying number of the user just as it was an identifying number of the sponsor on the deal. They were both dealing with numbers. So are you saying they had GSF's identification number? Correct. And that that was on the bills they got? That's correct. And, in fact, we know that they knew how to go through those voluminous statements because that's, in fact, how they calculated what they believed to be their damages in this case. Eventually they did do it, but they didn't do it as they went along, and they're now trying to hold GSF responsible for their own lack of due diligence and lack of proper monitoring of their bills. Really, this suit is about nationwide attempting to seek compensation for its own failures, for its failure to include a single word about the deal in the contract, which has been appropriately described as the only written agreement between the parties and the entire business relationship between the parties. There's not a single word in that contract that talks about the deal. They failed to advise GSF when the contract was terminated, as Your Honor has appropriately pointed out. They failed to advise them, don't use the deal anymore because we have to pay. They never told them that they had to pay. They failed to advise GSF, excuse me, they failed to remove their number from the Fannie Mae site, which took so much as a click on a mouse, a mouse click, excuse me, in order to remove them from their availability to GSF. They failed to make use of the GSF, excuse me, the deal contingent upon sale of mortgage loans to Fannie Mae. Keep in mind, Your Honor, that the contract itself doesn't require GSF to sell one single loan to Nationwide, nor does it require Nationwide to accept or purchase one single offered loan. It was the framework for the way in which they could sell, but it doesn't require the sale by GSF to Nationwide at all. And then the most other, I think, glaring failure is that failure to adequately review its monthly invoices and pay those invoices. Is GSF a big company like Nationwide or small? No, it's a small company. I don't know their number of employees. They have a local or their main office in Brookfield, Wisconsin. I think they have less than 30 employees, if I'm not mistaken. They do have branches, and those branches are one, two-person offices throughout the United States. Okay, thank you. Thank you. With regard to the breach of contract claim, Nationwide has yet to describe to us how a sponsorship constitutes proprietary information. Yes, their name is proprietary to them, but it's not proprietary information. It's a name, as I indicated, everybody in this country knows about, and the number is not proprietary. It's a number that was given to them by Fannie Mae in order to allow mortgage brokers to access the system. And even to expand the examination beyond what is written in the contract, I would say, is an incorrect thing. There are no ambiguities in this contract. It's an integrated contract which says in writing this is our entire agreement, and any changes that would be made to that contract would need to be in writing. But yet they urge the district court and urge this court to expand upon its interpretation of that contract, and that would be incorrect to do. The defined term of proprietary information, which is contained in the contract, comes nowhere near sponsorship of the DEO. And paragraph 12, the indemnification contract, which has been described as their fail-safe, is hardly a fail-safe. This is an indemnification clause. This means that GSF would have to indemnify Nationwide, presumably from a third-party action, based upon acts that were performed by GSF. And the examples given in the indemnification come nowhere near to use of the DEO. They are things such as fraud by GSF or conduct related to the origination of loans that are in violation of law, things that third parties might look to sue Nationwide for, and Nationwide would then be able to expect indemnification by GSF. It has nothing to do, you can't cherry-pick words out of a paragraph and turn them into something they're not. It doesn't say that GSF is responsible for damages to Nationwide for anything it does, regardless of whether it's related to this agreement or not. And I think it's been well established that use of the DEO is not related to this agreement. Then we look at the unjust enrichment claim. As I've indicated already, and I think we've discussed this already to some extent, first of all, the court's decision in this matter is to be given deferential treatment because it's a decision in equity. And the court made some significant findings that are worthy of that deferential treatment, such as GSF was not aware that the reports it paid for also had an accompanying cost to a sponsor. It did pay for every report it received. It never saw Nationwide invoices, GSF never saw Nationwide invoices or Fannie Mae pricing schedules. There were testimony by the officers of the corporation that they were shocked to find this out because it didn't make sense to them that somebody else would be paying for a report that only they would see. It is completely within reason that a reasonable person would come to that same conclusion. It also was found by the district court and is uncontradicted that Nationwide was provided information regarding the charges on a monthly basis, and I won't belabor that point further other than to say even their vice president said at her deposition, shame on us for not conducting an audit sooner. Could you speak, Ms. Neary, to the choice of law? I have some concerns about the district court's decision to group this under Wisconsin law. Parties agreed it would be Iowa. Iowa has a very broad interpretation of unjust enrichment. Yes, I'd be happy to address that, Your Honor. First of all, the language in the contract, which was written by Nationwide, was very narrow when it came to the choice of law provision. It stated that Iowa law shall apply to this agreement. It didn't say this agreement and anything related thereto or this agreement and anything dealing with the broader business relationship. It said this agreement, and that was the language that Nationwide chose. Well, they're suing on this agreement, though, are they not? Well, they are suing on this agreement, and with regard to the breach of contract claim, the district court in Wisconsin did apply Iowa law, and we admitted that. Everybody had admitted to that portion. Yeah, it's the unjust enrichment that I have some concern about. Right. Just because unjust enrichment is called a quasi-contractual claim does not make it a contractual claim. And the Seminole case in Iowa, in fact, the Palmer v. Unisys case, states that unjust enrichment is indeed not a contractual claim. And so as a result of that, the court felt that it was not bound by the choice of law provision in the contract because he specifically found that this contract didn't apply. Furthermore, the court determined that on a choice of, excuse me, with regard to Iowa v. Wisconsin law, they were substantially similar, and when the laws are substantially similar between the two states, the forum state law applies, and that's why he used Wisconsin law. The complaint by Nationwide is that when you see elements listed in the case law under Iowa law, it doesn't state that you have to have knowledge or an appreciation. Well, is it your position that GSF received no benefit? Our position is that GSF receives a benefit by use of these reports it receives from Fannie Mae in terms of determining. You needed a sponsor. We needed a sponsor. Is there anything in the record to indicate the availability? I know there's a suggestion of 8 to 12 sponsors, but is there any evidence of who they are and any possible contact by GSF with them as an alternative sponsor? There is evidence in the record that both GSF and Nationwide agree that they had 8 to 12 sponsors. Nationwide attempts in its reply brief to cast dispersions as to whether or not that's legitimate, but I have two comments to make on that. One is, in their statement of facts, they assert they had 8 to 12 sponsors, so that's a fact that they asserted. There was nothing in the record to indicate that they did not, and with regard to GSF, that GSF had 8 to 12 other sponsors that they could use and did use. As I indicated before, this assertion that only Nationwide was chosen is pulled out of thin air. There is nothing in the record to substantiate that. And further, the statement that Nationwide could not, excuse me, GSF could not identify those sponsors is also a false statement. They were never asked that question. The reference to the record is a question by counsel, which is prefaced by saying, even though you can identify them, can you answer this question? And my client answered that question. They were never asked to identify those sponsors. Thank you. Just one question. Why does Fannie Mae charge both the sponsor and the recipient of the deal? I don't have an answer from Fannie Mae. My best answer would be because they can, and that it's a money-making venture for Fannie Mae because, honestly, the sponsors are not receiving the report, so that's why it was a shock to my client that, in fact, the sponsors were being charged. Is Fannie Mae private? It's a government agency, is my understanding. Okay. Well, thank you, Ms. Neary. Thank you. Mr. Jorgensen? Thank you, Your Honors, for allowing me a little bit of time. On the issue, and we never got to it, of unjust enrichment, the district court misapplied the law. It's all in the briefing. They applied Wisconsin over Iowa. Wisconsin includes an element that clearly is not part of Iowa's law. They did not perform an analysis for choice of law, and then they looked at no law. Let's see, what's the unjust enrichment? I can't figure out what GSF did that you think was wrong. What GSF did that was wrong is they continued to use our sponsorship and have us incur the charges for their findings reports after the business relationship was over. They could have canceled them at any point if your firm kept records. Okay. I don't understand. It's a large company fussing over a tiny amount of money, and it could have protected itself so easily just by canceling the sponsorship. Your Honor, hindsight is 20-20, but the contract, as it's written by the parties, No, the contract doesn't say anything about this. It doesn't mention sponsorship. No, it doesn't, Your Honor, and it doesn't have to. It's so stupid. Why don't you say no sponsorship? We're not sponsoring anybody who doesn't sell mortgages to us. It's so simple. I'm sure in the future that they will, Judge. No, I'm not sure at all because they don't seem to show any sense in this case. Why are they going to be sensible in the future? Well, Your Honor, in drafting this one in such broad terms, I mean it would have a detrimental effect on creating master agreements in the future, commercial master agreements, if we can't rely on broad terms like the indemnity clause or even the proprietary information clause. Well, now you're saying that the company is not going to mention sponsor. No, I did not. That's what you just said. Oh, I apologize, Judge. The terms have to be broad. They can't specify anything. And I agree with that. That's what you just said. I agree with that wholeheartedly because I draft contracts, Judge. You're arguing out of both sides of your mouth. First you say that the contract will now be, with the suppliers of mortgages, will now be changed to make clear no sponsorship if you're not selling mortgages to Nationwide, right? If I have anything to do with it, well. You say no because if you start specifying things like sponsorship, you lose the value of broad terms. You ought to make up your mind about that. Both are valid points, Judge. Both are valid points? Absolutely. That Nationwide is going to have sponsorship in its next contracts and that it's not going to have it? No, it would have both. It would continue to employ broad language. Well, any smart counsel would. So why didn't you do it, you know. Hindsight is 20-20, Judge. I've been hindsight. It's such a big company. I understand it's a big company and they all make mistakes, Judge. I've never seen a mistake quite like this, actually. And if that's the case, then we have the alternative unjust enrichment, Your Honor. There's nothing unjust. You screwed up. This can't be laid at the feet of Nationwide completely. It is unjust. Once a business relationship is over, it's over. And it's common sense that you could not continue to use the benefits of a relationship once it's over. I had, over the course of proceeding with this, I had the benefit of enjoying some analogies, Your Honor, in closing here from other colleagues. Kind of a reductio ad absurdum. I just have one question for Judge Bolscher. Mr. Jorgensen, this contract was terminated because you were not receiving the mortgage transactions, right? It was terminated because they were unsatisfied with GSF's performance. Performance. So is it possible that you allowed the sponsorship to continue because GSF would hopefully reapply to you in the future to provide more business? Absolutely not. Absolutely not. That isn't a possibility, that you would hold that out as a carrot? No. There would be no carrot. Once it's terminated, they're terminated. And in fact— What sense does that—I don't understand your answer to Judge Plum. Once it's terminated, it's terminated forever? The contract was terminated. We could no longer purchase loans from GSF. What do you mean, could no longer? We could no longer purchase— You couldn't make a new contract with them. If we made a new contract, we could. Pardon? If we made a new contract— Well, what Judge Plum was asking was, isn't it possible that you maintain the sponsorship, paying the $20 to Fannie Mae, because you hoped that GSF would again be selling mortgages to you? Well, in an answer specifically to that question, one, I know for a fact that wasn't the case because they were dissatisfied with GSF, and two, it wouldn't have incurred this much in costs if that's in fact what they were doing and then ended up litigating this. What was their dissatisfaction with GSF? Poor procurement of loans and loan volume. What? Poor procurement of loans and loan volume. Yes, but what Judge Plum was asking was, wasn't there a possibility that GSF would increase the volume of its loans, its sale of mortgages to Nationwide, and encouraged by the fact that Nationwide was remaining a sponsor? No. That's the simple answer. It wouldn't happen. How do you know? How can you say things like that? Because I know my client. You don't even know anything about Nationwide. I just don't know how much that particular division is worth, but I certainly know from working with my client how they feel about GSF. So I can state, at least for your honor, that they had no interest. No, this is not the record. I don't buy that. You can't say that. Okay, Judge. There's nothing in the briefs about that. No, and this is outside the brief, and I'm just responding. This is outside the record and the briefs and everything. And that's why I'm just responding to the question, and I'm just saying that that was an issue. With some imaginary speculation about Nationwide. Okay. Well, thank you very much, Mr. George and Senator Musneri. Thank you very much. Have a good holiday, Your Honor. You too.